UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Michael Helvig and Carol Helvig,                    Civil No. 08-6444 (JRT/FLN)

       Plaintiffs,

       v.                                       **REPORT AND**
                                                     **RECOMMENDATION**
Mazak Optonics Corp.,

       Defendant.

—————————————————————————

William D. Mahler for Plaintiffs.
Patrick M. Biren for Defendant.

—————————————————————————

**THIS MATTER** came before the undersigned United States Magistrate Judge on January

8, 2010 on Defendant's Motion for Partial Summary Judgment [#15].  The matter was referred to

the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

For the reasons which follow, this Court recommends that Defendant's Motion for Partial Summary

Judgment [#15] be **DENIED**.

## I.   BACKGROUND

On January 11, 2007, Plaintiff Michael Helvig suffered a serious work-related injury caused

by a laser machine.  As a result, Helvig is permanently disabled.  (Mahler Aff. Ex. B.)  After her

husband was injured, Plaintiff Carol Helvig quit her position as the manager of the dog grooming

department of Pet Smart to provide 24-hour nursing care. (Mahler Aff. Ex. C. at 11-12.)  At the time,

Carol Helvig was making approximately $38,000 per year.  (Mahler Aff. Ex. A.)  Later, in February

2008, when 24-hour care for Michael Helvig was no longer necessary, Carol Helvig's  former job

at Pet Smart had been filled and there were no other openings at Pet Smart.  (Mahler Aff. Ex. C. at

36.) As a result, Carol Helvig opened her own dog grooming business. (Mahler Aff. Ex. C at 6.) Unfortunately, the business has not been profitable and the Helvigs lost their home to foreclosure. (Mahler Aff. Ex. C. at 9.) The Plaintiffs' complaint, Count I, Paragraph X, states as follows: "That as a result of the injuries sustained by Plaintiff Michael Helvig, Plaintiff Carol Helvig lost the services, society, and companionship of Michael Helvig and was otherwise damaged in a reasonable amount in excess of Fifty Thousand and No/100 Dollars ($50,000.)"   Plaintiffs, in a letter to Defendant dated September 10, 2009 made it clear that they intended to make a claim for Carol Helvig's past and future wage loss as part of her claim in the Complaint that she was "otherwise damaged" in excess of $50,000.   (Mahler Aff. Ex. A.)  The alleged wage loss claim totals $414,546.05 for net loss of past and future earnings. *Id.*

Defendant contends that Plaintiff's complaint pleading does not specifically plead lost wages, does not constitute a proper assertion of Carol Helvig's claim for lost wages, and is not supported by sufficient evidence. Defendant further argues that the pleading did not provide timely notice of a claim for lost wages by Carol Helvig, and that Carol Helvig's deposition testimony bars a claim for lost wages.

On April 22, 2009, Carol Helvig was deposed. She testified as follows in response to the following question by defense counsel:

> Q:    Now, this is a legal matter which is handled by your lawyer in terms of a loss of income claim in this particular lawsuit.  And I don't want to get into anything you've discussed with him becuse I can't ask you that.  But are you making a loss of income or wage claim for yourself as a result of Michael's accident or is it the result of his – is it the loss of his income as a result of the accident?
>
> A:    Right now it's just the loss of his income.

(Carol Helvig Dep. 13:17-25.)  Carol Helvig also testified at length about: 1) her old job at Pet

Smart; 2) her former salary; 3) how she had built up Pet Smart's dog grooming business and become a manager; 4) her new dog grooming business established after Michael Helvig was injured; 5) the fact that her new business does not generate enough money to cover the family's living expenses; 6) the fact that she would have gone back to work at Pet Smart after Michael Helvig no longer needed 24-hour care but there were no positions available; 7) the fact that her current economic skills are in the dog grooming business; and 8) her work as a legal secretary prior to 1995. (*See generally* Carol Helvig Dep. at 6-13, 15, 37-38.) Plaintiffs have also presented an accounting of how they calculated Carol Helvig's estimated wage loss as a result of Michael Helvig's injury. (Mahler Aff. Ex. A.) Defendant has not brought forth evidence contradicting Carol Helvig's deposition testimony or the wage loss accounting. Instead, Defendant simply argues that partial summary judgment should be granted with respect to her wage loss claim 1) because the claim was not timely or properly asserted and Defendant will be prejudiced by lack of notice, and 2) because Carol Helvig testified that she was solely bringing a wage loss claim on her husband's behalf.[1]

## II.    STANDARD OF REVIEW

According to Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In order to determine whether a certain fact is material, "it is the substantive law's identification of which facts are critical

---

[1] Defendant also argues that Minnesota law prohibits Carol Helvig from making an economic wage loss claim as part of her loss of consortium claim because the two claims are distinct. *M. Thill v. Modern Erecting Co.*, 174 N.W. 2d 865, 869 (Minn. 1969). However, as Plaintiffs have made clear that they are asserting Carol Helvig's wage loss claim independent of her loss of consortium claim, the Court need not address this argument.

and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment will not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The inquiry performed is the threshold inquiry of determining whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

When determining whether to grant a motion for summary judgment, a court must view all of the facts in the light most favorable to the non-moving party and give the non-moving party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). When the moving party brings forth a proper summary judgment motion, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Anderson*, 477 U.S. at 256 ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c).")

## III. LEGAL ANALYSIS

To extent that a claim for lost wages by an uninjured spouse is contemplated by Minnesota law[2], the Court concludes that Plaintiffs have presented evidence sufficient to create a genuine issue of material fact with respect to Carol Helvig's wage loss claim.

As an initial matter, the Court concludes that the language of Count I of the complaint, combined with Carol Helvig's substantial deposition testimony regarding the loss of her job and the unprofitable nature of her independent dog grooming business provided Defendant with sufficient notice of Carol Helvig's wage loss claim. In addition, the Court does not consider Carol Helvig's deposition testimony that, "Right now it's just the loss of [her husband's] income" to bar the wage loss claim, as Carol Helvig is not a lawyer and was apparently mistaken about the nature of the allegations in this lawsuit. This mistake or misunderstanding could have been a result of any number of factors, including the awkward nature of the question posed to her, or the possibility that her lawyer may not have fully informed her about each individual claim being made in her case. At the very least, plaintiffs' counsel has since made it clear via the September 10, 2009 letter that Plaintiffs intend to claim Carol Helvig's lost wages as part of their damages under Count I of the complaint. Additionally, Plaintiffs have provided an

---

[2] It appears that under Minnesota law an uninjured spouse like Carol Helvig may not be able to recover wages lost in caring for an injured spouse. Minnesota follows the majority rule under which the *injured* spouse can recover the reasonable or market value of nursing services, even if the nursing was gratuitously rendered by an institution or a family member (*e.g.*, an uninjured spouse) without expectation of compensation. *Dahlin v. Kron*, 45 N.W.2d 833, 837-838 (Minn. 1950) (citing *Wells v. Minneapolis Baseball & Athletic Ass'n*, 142 N.W. 706, 708-09 (Minn. 1913)). An *uninjured* spouse, however, generally has no remedy for past, present, or future wages lost due to nursing. *Id.* Nevertheless, Defendant did not raise these arguments. Therefore, the Court declines to consider this issue *sua sponte*.

accounting of their wage loss claims to the Defendant.  Finally, the fact that Carol Helvig's

deposition thoroughly delved into her loss of employment, wages, new employment, etc. means

that any additional discovery will likely be very minimal.

With respect to the sufficiency of Plaintiff's evidence under the summary judgment

standard, Plaintiffs have presented evidence that she left her old job at Pet Smart and her salary

of $38,000 to care for her injured husband, that no positions at Pet Smart were available when

she was able to go back to work, that she started a dog grooming business, that the new business

has been unprofitable, that her current economic skills are in the dog grooming business, and that

her accounting of her net lost wages as a result of Michael Helvig's injury is $414,546.05.  The

record contains no contradictory evidence on these points.  Therefore, viewing the record in the

light most favorable to the non-moving party, the Court finds that Plaintiffs have presented

evidence that creates a genuine issue of material fact as to whether Carol Helvig lost past,

present, or future wages as a result of Michael Helvig's injury.  Accordingly, to the extent

Defendant seeks summary judgment with respect to Carol Helvig's claim for lost wages, the

motion should be denied.

## IV.  RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY**

**RECOMMENDED** that the  Defendant's Motion for Partial Summary Judgment [#15] be

**DENIED**.


DATED: April 21, 2010                                  *s/ Franklin L. Noel*
                                                       FRANKLIN L. NOEL
                                                       United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **May 5, 2010**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **May 5, 2010,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.